UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RONALD M. HINES, D.V.M., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:13-CV-56 |
| | ) | |
| BUD E. ALLDREDGE, JR., DVM, in his official | ) | |
| capacity as President of the Texas State Board | ) | |
| of Veterinary Medical Examiners, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

---

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)

---

MATTHEW R. MILLER
INSTITUTE FOR JUSTICE TEXAS CHAPTER
816 Congress Ave., Suite 960
Austin, TX 78701
(512) 480-5936
(512) 480-5937 (fax)
mmiller@ij.org

JEFF ROWES*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
jrowes@ij.org

*Admitted pro hac vice*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF CITATIONS ..................................................................................... iii

STATEMENT OF ISSUES TO BE RULED ON BY THE COURT ........................................... 1

    1.    Is Dr. Hines correct that individualized veterinary advice is a form of speech protected by the First Amendment? ........................................................... 1

    2.    If Dr. Hines is correct that his advice is protected speech, is he also correct that he has stated valid claims for relief under the First Amendment? ..................................................................................... 1

    3.    Is Dr. Hines correct that he has stated claims for relief under the equal-protection and substantive due-process clauses of the Fourteenth Amendment? ..................................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................ 1

    1.    Dr. Hines's Free-Speech Claims Involve Pure Speech and Courts Do Not Dismiss These Kinds of Constitutional Claims at the Pleadings Stage ................. 1

    2.    The Board is Wrong that Individualized Advice Is Either Conduct or a Form of Speech that Courts Do Not Protect Under the Amendment ................... 1

    3.    Dr. Hines Has Stated Plausible Fourteenth Amendment Claims Because It is Irrational to Ban a Licensed Veterinarian from Giving Veterinary Advice ..................................................................................... 2

PROCEDURAL HISTORY AND STAGE OF THE PROCEEDINGS ....................................... 3

FACTS ................................................................................................... 3

    I.    DR. HINES USED THE INTERNET TO TALK WITH PET OWNERS ACROSS THE COUNTRY AND AROUND THE WORLD ................................................................................... 3

    II.    DR. HINES'S VETERINARY ADVICE IS PURE SPEECH WITH NO CONDUCT ......................................................................... 5

    III.    TEXAS SUDDENLY PUNISHES DR. HINES AFTER HE SPENDS A DECADE HELPING PET OWNERS AROUND THE WORLD WITHOUT INCIDENT ................................................................. 6

STANDARD OF REVIEW ................................................................................... 8

ARGUMENT ..................................................................................................... 8

    I.     THE MOTION TO DISMISS DR. HINES'S FREE-SPEECH
           CLAIMS SHOULD BE DENIED BECAUSE PUNISHING HIM FOR
           COMMUNICATING WITH ADULTS ABOUT THEIR PETS
           VIOLATES THE FIRST AMENDMENT ........................................... 8

         A.    The Board Is Incorrect that Individualized Advice Is Conduct,
               Not Speech ........................................................................... 8

         B.    The Board Is Wrong that Individualized Advice Is, Like Fraud
               or Obscenity, a Form of Speech That Is Unprotected ............. 11

         C.    Dr. Hines Has Plainly Stated a Plausible Claim for Relief
               Under the First Amendment .................................................... 14

    II.    THE MOTION TO DISMISS DR. HINES'S FOURTEENTH
           AMENDMENT CLAIMS SHOULD BE DENIED BECAUSE IT IS
           IRRATIONAL TO TREAT A LICENSED VETERINARIAN LIKE A
           LAYPERSON ............................................................................ 14

         A.    Dr. Hines Has Stated an Equal-Protection Claim That It Is
               Irrational to Treat Him Like a Layperson When He Gives
               Online Advice ....................................................................... 15

         B.    The "Effective Foreclosure" Test Is Irrelevant Here and Does
               Not Defeat Dr. Hines's Substantive Due Process Claim ......... 19

             1.    The "Effectively Foreclosed" standard is narrow and
                    applies to special privileges ........................................ 20

             2.    Forbidding Dr. Hines from communicating with pet
                    owners solely via the Internet effectively forecloses
                    Dr. Hines from pursuing his calling ............................. 20

              3.    Whether someone has been "Effectively Foreclosed"
                    from pursuing an occupation is a factual determination
                    and cannot, therefore, be resolved at the pleadings stage ........... 22

CONCLUSION ................................................................................................ 22

CERTIFICATE OF SERVICE ............................................................................ 24

EXHIBIT A – Complaint for Declaratory and Injunctive Relief

## TABLE OF CITATIONS

**Cases**                                                                    **Page**

*Accountants Soc'y of Va. v. Bowman*,
    860 F.2d 602 (4th Cir. 1988) ................................................................. 10-11

*Adams v. City of Alexandria*,
    878 F. Supp. 2d 685 (W.D. La. 2012) ........................................................ 13

*Allstate Ins. Co. v. Abbott*,
    495 F.3d 151 (5th Cir. 2007) .................................................................... 14

*Asgeirsson v. Abbott*,
    696 F.3d 454 (5th Cir. 2012) .................................................................... 14

*Brown v. Hovatter*,
    2006 U.S. Dist. LEXIS 76956 (D. Md. 2006) ............................................ 15

*Byrum v. Landreth*,
    566 F.3d 442 (5th Cir. 2009) .................................................................... 13

*Coggeshall v. Mass. Bd. of Registration of Psychologists*,
    604 F.3d 658 (1st Cir. 2010) .................................................................... 10

*Cohen v. Cowles Media Co.*,
    501 U.S. 663 (U.S. 1991) .......................................................................... 9

*Conant v. Walters*,
    309 F.3d 629 (9th Cir. 2002) ....................................................... 2, 11, 12-13

*Daly v. Sprague*,
    742 F.2d 896 (5th Cir. 1984) ............................................................... 8, 10

*Dittman v. California*,
    191 F.3d 1020 (9th Cir. 1999) .................................................................. 21

*Fantasy Ranch, Inc. v. City of Arlington, Tex.*,
    459 F.3d 546 (5th Cir. 2006) .................................................................... 14

*Gaalla v. Citizens Med. Ctr.*,
    2010 U.S. Dist. LEXIS 135395 (S.D. Tex. Dec. 22, 2010) ........................... 20

*Holder v. Humanitarian Law Project*,
    130 S. Ct. 2705 (2010) .......................................................... 2, 8-9, 10, 12, 13

iii

*Lawline v. Am. Bar Ass'n*,
 956 F.2d 1378 (7th Cir. 1992) ................................................................. 10, 12

*Legal Servs. Corp. v. Velazquez*,
 531 U.S. 533 (2001) ............................................................................ 2, 11-12

*Locke v. Shore*,
 634 F.3d 1185 (11th Cir. 2011) ............................................................... 10

*Lowe v. SEC*,
 472 U.S. 181 (1985) ............................................................................. 10, 11

*MacArthur v. San Juan Cty.*,
 416 F. Supp. 2d 1098 (D. Utah 2005) ....................................................... 20

*Martin v. Memorial Hosp. at Gulfport*,
 130 F.3d 1143 (5th Cir. 1997) ................................................................. 20

*Merrifield v. Schwarzenegger*,
 2004 U.S. Dist. LEXIS 31783 (N.D. Cal. 2004) ........................................ 15

*Moore-King v. Cty. of Chesterfield*,
 708 F.3d 560 (4th Cir. 2013) ............................................................... 10-11

*Munie v. Koster*,
 2011 U.S. Dist. LEXIS 22841 (E.D. Mo. 2011) ........................................ 15

*Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*,
 228 F.3d 1043 (9th Cir. 2000) ............................................................... 10, 12

*Petersen v. Fla. Bar*,
 720 F. Supp. 2d 1351 (M.D. Fla. 2010) ..................................................... 20

*Pickup v. Brown*,
 2012 WL 6021465 (E.D. Cal. Dec. 4, 2012) ............................................. 13

*Planned Parenthood v. Casey*,
 505 U.S. 833 (1992) ............................................................................... 12

*Ranger Ins., Ltd. v. Transocean Offshore Deepwater Drilling, Inc.*,
 710 F.3d 338 (5th Cir. 2013) ................................................................... 8

*Reno v. ACLU*,
 521 U.S. 844 (1997) ............................................................................... 14

*Rust v. Sullivan*,

500 U.S. 173 (1991) ............................................................................................... 12

*Saint Joseph Abbey v. Castille*,
712 F.3d 215 (5th Cir. 2013) .......................................................... 2, 14-18

*Sanchez v. County of El Paso*,
486 Fed. Appx. 455 (5th Cir. Tex. 2012) ................................................ 20

*Shulz v. Wells*,
2010 WL 1141452 (M.D. Ala. Mar. 3, 2010) ......................................... 12

*Trimble v. City of New Iberia*,
73 F. Supp. 2d 659 (W.D. La. 1999) ....................................................... 13

*United States v. Stevens*,
130 S. Ct. 1577 (2010) ............................................................................ 11

*Wedges/Ledges of Cal., Inc. v. City of Phoenix*,
24 F.3d 56 (9th Cir. 1994) ...................................................................... 22

*Welch v. Brown*,
2012 WL 6020122 (E.D. Cal. Dec. 3, 2012) .......................................... 13

*Zisser v. Fla. Bar*,
747 F. Supp. 2d 1303 (M.D. Fla. 2010) .................................................. 20

## **Statutes**

Tex. Occ. Code § 801.351(a)(2) ........................................................................... 7

Tex. Occ. Code § 801.351(b) ................................................................................ 7

Tex. Occ. Code § 801.351(c) ................................................................................ 7

## STATEMENT OF ISSUES TO BE RULED ON BY THE COURT

1.  Is Dr. Hines correct that individualized veterinary advice is a form of speech protected by the First Amendment?

2.  If Dr. Hines is correct that his advice is protected speech, is he also correct that he has stated valid claims for relief under the First Amendment?

3.  Is Dr. Hines correct that he has stated claims for relief under the equal-protection and substantive due-process clauses of the Fourteenth Amendment?

## SUMMARY OF THE ARGUMENT

The motion to dismiss should be denied.

### 1.  Dr. Hines's Free-Speech Claims Involve Pure Speech and Courts Do Not Dismiss These Kinds of Constitutional Claims at the Pleadings Stage.

Dr. Hines's free-speech claims cannot be resolved at the pleadings stage. His Complaint presents a question of first impression involving pure speech: How does the free-speech clause protect online veterinary advice that is devoid of conduct? Dr. Hines has been fined, suspended, and forced to retake a portion of the veterinary licensing exam for the offense of *communicating* with adults about their pets over the Internet. The Board has not cited any analogous case—a licensed professional with an as-applied challenge to a specific speech restriction—that was dismissed. Courts do not dismiss First Amendment cases absent extraordinary circumstances not present here.

### 2.  The Board Is Wrong That Individualized Advice Is Either Conduct or a Form of Speech That Courts Do Not Protect Under the First Amendment.

The Board does not argue that Dr. Hine's free-speech claims should be dismissed because the Complaint lacks adequate factual allegations. Instead, the Board argues as a matter of law that veterinary advice is conduct, not speech. In the alternative, the Board may be arguing that individualized advice is like fraud or obscenity—a category of speech that courts do not protect.

1

Both positions are wrong. In 2010, the Supreme Court unanimously held that individualized advice is protected speech. *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2723-24 (2010). Indeed, courts have recently protected the individualized advice of lawyers and doctors. *See, e.g.*, *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 543-544 (2001); *Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002) ("Being a member of a regulated profession does not, as the government suggests, result in a surrender of First Amendment rights."). Dr. Hines has valid free-speech claims and they should not be dismissed.[1]

### 3. Dr. Hines Has Stated Plausible Fourteenth Amendment Claims Because It Is Irrational to Ban a Licensed Veterinarian from Giving Veterinary Advice.

The Board's motion to dismiss Dr. Hines's Fourteenth Amendment claims should also be denied. Here, the Board does assert that the Complaint lacks sufficient factual allegations because, according to the Board, the Complaint does not negate every conceivable justification for the challenged statutes. But a Complaint does not have to be as expansive as the human imagination to survive a 12(b)(6) motion. The monks of St. Joseph Abbey recently prevailed on their Fourteenth Amendment claims that it was irrational to prohibit all but licensed funeral directors from selling caskets to the public. *St. Joseph Abbey v. Castille*, 712 F.3d 215, 226-27 (5th Cir. 2013). They won because they adduced evidence and reasoning refuting any plausible justification for the law. *Id*. at 223. Here, the Complaint alleges that punishing a licensed veterinarian such as Dr. Hines for communicating useful advice to pet owners does not rationally advance any government interest in the health of the public or animals. His claim is just as plausible as the monks' claims were, and he is entitled to prove his facts and make his case.

---

[1] The Board also moves to dismiss freedom-of-association claims, Motion to Dismiss at 19-20, but Dr. Hines has no such claims.

## PROCEDURAL HISTORY AND STAGE OF THE PROCEEDINGS

This case comes before the Court on the motion of Defendant members of the Texas State Board of Veterinary Medical Examiners' ("Board"), Doc. 44, to dismiss for failure to state a claim. On April 23, 2013, Plaintiff Dr. Ronald Hines filed suit in this Court seeking relief under the First and Fourteenth Amendments. Doc. 23. The Board moves to dismiss the Complaint in its entirety. The Board has not answered the Complaint and no discovery has occurred. The parties are required to file their joint discovery/case management plan by August 13, 2013. Doc. 11.

## FACTS

### I.  DR. HINES USED THE INTERNET TO TALK WITH PET OWNERS ACROSS THE COUNTRY AND AROUND THE WORLD.

Dr. Hines is a Texas-licensed veterinarian with a Ph.D. in biology. Doc. 23, Complaint ("Compl.") ¶¶ 8-9. His veterinary career began in 1966 when he enlisted in the U.S. Public Health Service. *Id.* ¶ 10. He left the Public Health Service in 1979 with the Surgeon General's Commendation Medal, retiring because he was disabled by a fall into machinery at a National Institutes of Health research facility. *Id.* ¶ 11-12. For the next 20 years, he worked in traditional veterinary settings and at Sea World. *Id.* ¶¶ 14-16. Dr. Hines retired in 2002 after his age and disabilities made it too difficult for him to remain in practice. *Id.* ¶ 17.

He did not, however, wish to stop helping pet owners. He launched a website in 2002—www.2ndchance.info—to disseminate articles that he writes on pet care. *Id.* ¶¶ 18-19. Readers of Dr. Hines's website soon inundated him with emails asking for advice about their pets. *Id.* ¶ 20. He decided to use his website to provide veterinary advice to those in need wherever they were located. *Id.* Dr. Hines estimates that forty-five percent of his correspondents live within the

3

United States, but outside of Texas, and half are residents of foreign countries. He believes that less than five percent of his correspondents live in Texas. *Id*. ¶ 42.

He often helped pet owners who could not afford conventional veterinary care or who live in places without access to trustworthy veterinarians. *Id*. ¶ 26. For example, in recent years, Dr. Hines helped an impoverished double-amputee in New Hampshire who lived alone with his beloved dog. *Id*. ¶ 29. After the dog became seriously ill, Dr. Hines provided advice and then found a local veterinarian willing to work *pro bono*. *Id*. In another example, Dr. Hines advised a Scottish husband and wife serving as missionaries in a region of Nigeria without veterinarians. *Id*. ¶ 27. Absent Dr. Hines, or another veterinarian willing to assist via the Internet, their cat would have gone without care. *Id*.

Dr. Hines was particularly helpful in two other circumstances. First, pet owners often contacted Dr. Hines when they had received conflicting diagnoses from two or more local veterinarians and needed help deciding what to do. *Id*. ¶ 35. Second, Dr. Hines routinely discovered that pets had been prescribed the wrong medication or the correct medication but at the wrong dosage. *Id*. ¶ 36. In such situations, he explained the medication problem, sent the pet owner a copy of the Food and Drug Administration package insert on the medication, and urged the pet owner to return to his or her prescribing veterinarian to have the error corrected. *Id*. Dr. Hines never prescribed medication himself. *Id*. ¶ 39

Dr. Hines did not initially charge for his online advice. His website had always been a labor of love, reflecting a lifelong dedication to caring for animals. He introduced a flat fee of $8.95 in November 2003 to screen out trivial inquiries, enabling him to focus on circumstances in which his knowledge could be put to its highest use. *Id*. ¶ 31. He gradually increased the flat

fee to $58 by September 2011. *Id.* ¶ 32. That year, he made about $2,800, despite devoting most of his time to pet owners. *Id.* ¶ 34.

Dr. Hines charged only those who could pay. *Id.* ¶ 33.Those who could not, he helped for free. *Id.* If he discovered that he could not help a pet owner, he refunded the fee. *Id.* ¶ 37.

## II.    DR. HINES'S VETERINARY ADVICE IS PURE SPEECH WITH NO CONDUCT.

The advice that Dr. Hines provided via the Internet was pure speech. He exchanged emails with pet owners. *Id.* ¶ 21. Emails from pet owners typically included the owner's thoughts and veterinary records. *Id.* ¶¶ 22-23. Dr. Hines's emails typically included his thoughts and copies of relevant veterinary literature. ¶¶ 24, 35-36. Sometimes, Dr. Hines spoke with pet owners on the telephone, usually when he had identified an emergency that required immediate treatment at an animal hospital. *Id.* ¶ 38. He never advised pet owners to do anything illegal. ¶ 40.

Dr. Hines did not engage in any veterinary conduct. Because the animals he helped were scattered across the country and around the world, he had no physical contact with them. *Id.* ¶ 22. He did not, and could not, perform an in-person physical examination or any other veterinary procedure. As mentioned earlier, he did not prescribe or distribute veterinary medications. He simply communicated with pet owners about their pets. *Id.* ¶ 39.

Dr. Hines always exercised the same professional judgment when communicating with pet owners via the Internet that a veterinarian would exercise in a more traditional context. If he could not help a pet because a physical examination or procedure was necessary, he told the pet owner and urged him or her, when possible, to visit a conventional veterinarian. *Id.* ¶ 37. His website contains a clear disclaimer explaining the inherent limitations of Internet-based

veterinary advice. *Id.* ¶ 39. In sum, he helped when he could by communicating with pet owners, and helped only as much as communicating alone would allow.

### III.   TEXAS SUDDENLY PUNISHES DR. HINES AFTER HE SPENDS A DECADE HELPING PET OWNERS AROUND THE WORLD WITHOUT INCIDENT.

By March 2012, Dr. Hines had spent more than a decade on the Internet helping hundreds of pet owners across the country and around the world. He was one of the millions of people who took advantage of the global Internet revolution to share advice and ideas on an unprecedented scale. Today, there are many websites offering veterinary advice. *Id.* ¶¶ 71-72. And those websites simply complement other communications media—including radio, television, and newspapers—that veterinarians use to convey advice to pet owners. For example, the deputy director of the Dallas Zoo and the Dallas Director of the Texas Veterinary Medical Association host a radio show—Animals on the Air—to advise callers. *Id.* ¶ 71.

Given the ubiquity of Internet and mass-media veterinary advice, Dr. Hines was stunned when the Texas State Board of Veterinary Medical Examiners informed him in March 2012 that the Board considered his website illegal and intended to punish him for maintaining it. *Id.* ¶¶ 63-64; *see also id.* ¶¶ 66-70. A year later, on March 25, 2013, the Board formally punished Dr. Hines for providing veterinary advice through his website, fining him, suspending his license for a year, and making him retake the jurisprudence portion of the veterinarian-licensing exam.[2] *Id.* ¶¶ 78-79.

The Board imposed this punishment despite the absence of any allegation that Dr. Hines's *did* anything to any animal, much less an allegation that he *did* something harmful during his ten years on the Internet. *Id.* ¶ 69-70, 91. Instead, the Board punished Dr. Hines solely for *communicating* veterinary advice to pet owners. *Id.* ¶¶ 67, 77. The Board's "findings of fact"

---

[2] Dr. Hines is not seeking to undo the Board's past punishment. He is seeking an injunction to prevent the Board from punishing him again for communicating with pet owners after his suspension expires. Compl. ¶¶ 95-96.

do not contain even an allegation that his *communication* with pet owners resulted in harm to any animal. *See* Compl. Exs. A & B.

The Board punished Dr. Hines simply for communicating veterinary advice because, under the Texas Veterinary Licensing Act, veterinary advice may be offered only in the context of a formal veterinarian-client-patient relationship, and such a relationship may not be formed unless the veterinarian has physically examined the animal. The Act specifies that a veterinarian-client-patient relationship may arise only when, among other things, the veterinarian possesses adequate knowledge of the animal to provide sound advice. Tex. Occ. Code Ann. § 801.351(a)(2). A veterinarian possesses "adequate knowledge" only if the veterinarian has recently examined the animal or visited the premises where it is kept. Tex. Occ. Code Ann. § 801.351(b). In 2005, Texas amended the statute to prohibit a veterinarian-client-patient relationship from arising solely via electronic means. Tex. Occ. Code Ann. § 801.351(c).

Under the Veterinary Licensing Act, Dr. Hines cannot form a veterinarian-client-patient relationship when he communicates with pet owners online—and hence he is barred from giving any veterinary advice at all—because he does not physically examine the animals he helps. He cannot physically examine them because he is a disabled 69-year-old living in Brownsville, Texas, and the animals he helps are on every continent except Antarctica.

Dr. Hines has ceased providing veterinary advice via his website as a result of the Board's punishment. *Id*. ¶¶ 65, 83. There are now pet owners and pets all over the world who will get no veterinary care because Texas has silenced Dr. Hines. *Id*. ¶¶ 84-87. And there are now pet owners and pets who are getting care, but who would benefit from having that care supplemented by Dr. Hines's inexpensive (and often free) guidance. *Id*. Dr. Hines wants to

resume helping people and their pets once his punishment expires, and that is why he brought this constitutional challenge. *Id.* ¶¶ 88-89, 93.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court presumes that the allegations of the complaint are true, and will deny the motion if the complaint states a claim that is plausible on its face. *Ranger Ins., Ltd. v. Transocean Offshore Deepwater Drilling, Inc.*, 710 F.3d 338, 344 (5th Cir. 2013).

## ARGUMENT

I. **THE MOTION TO DISMISS DR. HINES'S FREE-SPEECH CLAIMS SHOULD BE DENIED BECAUSE PUNISHING HIM FOR COMMUNICATING WITH ADULTS ABOUT THEIR PETS VIOLATES THE FIRST AMENDMENT.**

A. **The Board Is Incorrect That Individualized Advice Is Conduct, Not Speech.**

The Board seeks to dismiss Dr. Hines's First Amendment claims by disputing a matter of law, not the adequacy of the Complaint's factual allegations. The gravamen of the Board's free-speech argument is that individually tailored advice—such as Dr. Hines' communication with a specific person about his or her pet—is occupational conduct, not speech. Doc. 44, Defendants' Motion to Dismiss ("MTD") at 10-11 ("'Limitations on professional conduct necessarily affect the use of language and association; accordingly, reasonable restraints on the practice of medicine and professional actions cannot be defeated by pointing to the fact that communication is involved.'") (quoting *Daly v. Sprague*, 742 F.2d 896, 899 (5th Cir. 1984)). In the Board's view, when the government regulates speech under occupational-licensing statutes, it is not actually regulating *speech*. MTD at 8.

The Board is flat wrong. In 2010, the Supreme Court unanimously rejected the exact argument that the Board advances here—that individualized advice is conduct, not speech.

8

*Humanitarian Law Project*, 130 S. Ct. at 2723-24 (rejecting any constitutional distinction between "general or unspecialized knowledge" and specific "advice derived from 'specialized knowledge'"). In *Humanitarian Law Project*, a retired judge, a doctor, and several nonprofits brought a First Amendment challenge to a federal statute that prohibited material assistance to designated foreign terrorists. *Id.* at 2713-14. The statutory definition of material assistance included individualized advice, which forbade the plaintiffs from providing Kurdish and Sri Lankan groups designated as terrorist with technical and legal advice about how to resolve their grievances nonviolently. *Id.* at 2713-14. The State Department argued that the First Amendment did not apply because individualized technical and legal advice for specific people—as opposed to general opinions for the public at large—were a form of conduct that, at most, only incidentally affected speech. *Id.* at 2723. In rejecting the proposition that advice is conduct rather than speech, the Supreme Court held that the government cannot declare speech to be conduct when the purported "conduct triggering coverage under the statute consists of communicating a message." *Id.* at 2724.

But that is exactly what triggered the punishment of Dr. Hines: communicating a message to pet owners. He communicated with pet owners across the country and around the world by writing to them and by reading what they wrote to him. Compl. ¶ 26-30, 35-40. He did not *do* anything. *Id.* ¶ 39. He performed no procedures and prescribed no medication. *Id.* If individually tailored advice to designated terrorists is protected speech and not conduct, then veterinary advice to pet owners is also protected speech, not conduct.[3]

---

[3] Dr. Hines recognizes that some speech is so incidental to conduct that it elicits no First Amendment protection. For example, the Supreme Court has long recognized that regulating contractual terms does not implicate the First Amendment, even though contracts are struck through the medium of language. *See, e.g.*, *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991). Nor does the regulation of the drilling of teeth acquire a First Amendment dimension simply because a dentist says "open wide." But the fact that *some* occupational speech has negligible First Amendment import does not entail, as the Board seems to believe, that *all* occupational speech is outside the First Amendment.

The notion that individualized advice is conduct and not speech originated with a now-superseded concurrence by Justice White in *Lowe v. SEC*, 472 U.S. 181, 228 (1985), which the Board erroneously cites as though this nonbinding opinion remains even persuasive guidance. MTD at 10. In *Lowe*, which concerned whether the publisher of an investment newsletter needed to register as an investment advisor, Justice White would have announced a bright-line rule that general opinions are protected speech whereas individualized advice to paying clients is occupational conduct.[4] *Id.* The Supreme Court has never cited, much less adopted, the concurrence. Nor has the Fifth Circuit adopted it.[5] Justice White's concurrence squarely conflicts with *Humanitarian Law Project*. There are only two decisions that rely on Justice White's defunct *Lowe* concurrence—*Accountants Soc'y of Virginia v. Bowman*, 860 F.2d 602 (4th Cir. 1988) and *Locke v. Shore*, 634 F.3d 1185 (11th Cir. 2011)—but *Bowman* predates *Humanitarian Law Project* and *Locke* never mentions it.[6] The Fourth Circuit has retreated from *Bowman*'s apparent holding that individualized advice is conduct, not speech. That court recently applied

---

[4] To the extent the Court finds the *Lowe* concurrence persuasive, it applies only to a relationship with a paying client. *Lowe v. SEC*, 472 U.S. 181, 233 (1985). Dr. Hines's First Amendment claim concerning unpaid advice, Compl. ¶¶99-109 (Count I), cannot be dismissed under that concurrence. *See also Accountants Soc'y of Virginia v. Bowman*, 860 F.2d 602, 604 (4th Cir. 1988) (noting that *Bowman* applied to individualized advice to a paying client).

[5] The Board identifies one Fifth Circuit case, MTD at 11 (citing *Daly v. Sprague*, 742 F.2d 896, 899 (5th Cir. 1984)), but *Daly* is factually inapposite. First, it was a summary judgment case that came before the Fifth Circuit after the Fifth Circuit had previously remanded the case because the trial court failed to consider the plaintiff's First Amendment claims. 742 F.2d at 898. *Daly* thus does not stand for the proposition that First Amendment claims in the occupational context should be readily dismissed. Second, *Daly* involved a doctor who was briefly suspended from working at a state-owned hospital. *Id.* at 899. The suspension incidentally burdened his communication with his patients, and he was not, unlike Dr. Hines, suspended *because of* his communications with his patients. Finally, *Daly*'s analysis is perfunctory and it long predates *Humanitarian Law Project*.

[6] The Board erroneously cites three other pre-*Humanitarian Law Project* cases for the proposition that occupational restrictions on speech regulate conduct, not speech. MTD at 12. *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology* is explicitly a First Amendment case. 228 F.3d 1043, 1054 (9th Cir. 2000). *Lawline v. Am. Bar Ass'n* was a facial challenge to the validity of law licensing in general, which the Seventh Circuit rejected, but acknowledged that there may be specific instances of lawyer speech that are protected and could be addressed on an as-applied basis. 956 F.2d 1378, 1386 (7th Cir. 1992). Finally, *Coggeshall v. Mass. Bd. of Registration of Psychologists* involved claims that were precluded or lacked standing. 604 F.3d 658, 663-64, 666 (1st Cir. 2010). The First Circuit had a throw-away line in the second to last paragraph about how a system of occupational regulation is not invalid merely because speech is involved, but it did not hold, and was not presented with the question, that individualized advice is conduct, not speech. *Id.* at 667.

*Bowman* to fortuneteller licensing, but expressly held that the First Amendment applied. *Moore-King v. Cty. of Chesterfield*, 708 F.3d 560, 567 (4th Cir. 2013) ("[W]e conclude that the *First Amendment Free Speech Clause* affords some degree of protection to" advice in the form of fortunetelling) (emphasis added). *Bowman* can no longer be read for the proposition that advice is conduct, not speech. Thus, neither the *Lowe* concurrence nor its limited progeny are good law for the proposition that individualized advice is conduct, not speech.

### B.     The Board Is Wrong That Individualized Advice Is, Like Fraud or Obscenity, a Form of Speech That Is Unprotected.

In the alternative, the Board's motion to dismiss Dr. Hines's free-speech claims could be read to suggest that occupational speech, although *speech*, is not a category of speech to which courts extend First Amendment protection. In other words, perhaps the Board is suggesting that Dr. Hines's helpful advice to pet owners is the equivalent of fraud or obscenity. *See United States v. Stevens*, 130 S. Ct. 1577, 1584 (2010) (surveying historically unprotected categories of speech).[7] This is at least as wrong, if not more wrong, than the Board's argument that individualized advice is conduct, not speech.

The Board is wrong because being "a member of a regulated profession does not, as the government suggests, result in a surrender of *First Amendment* rights." *Conant*, 309 F.3d at 637 (emphasis added). Recently, courts have struck down restrictions on individualized advice even in the two occupations in which the government interest in regulation is thought to be at its maximum: law and medicine. In *Legal Services Corp. v. Velazquez*, for example, the Supreme Court considered a nonprofit law firm's First Amendment challenge to a federal statute that forbade attorneys from advancing certain legal theories in the course of representing indigent

---

[7] It is doubtful that there are any undiscovered categories of wholly unprotected speech, given that *Stevens* invalidated a federal statute banning videos of animal mutilation and torture that were viewed for purposes of sexual gratification. *United States v. Stevens*, 130 S. Ct. 1577, 1592 (2010).

clients bringing welfare claims. 531 U.S. 533, 536 (2001). In other words, the challenged statute regulated how lawyers practice law. The Supreme Court analogized the occupational regime at issue to a limited forum that the federal government designed to facilitate the private speech of lawyers to their clients and to the courts. *Id.* at 542. The Court held that, when government creates a limited forum for private legal representation, the First Amendment protects the substance of legal advice from undue interference. *Id.* at 544. Thus, *Legal Services Corp.* stands for the proposition that private legal advice from a lawyer to a client, as well as the legal theories that a lawyer advances in open court, are within the ambit of the First Amendment. *See Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1386 (7th Cir. 1992) (dismissing facial challenge by non-lawyers, but recognizing even before *Legal Services Corp.* that licensed lawyers may have valid free-speech claims against some forms of professional regulation).

Medical advice is the same.[8] In *Conant v. Walters*, for example, medical doctors challenged a federal statute that would strip them of their federal license to prescribe medication if they advised a patient to use marijuana for medical purposes (such use was permissible under state law in California and Arizona). 309 F.3d 329, 632 (9th Cir. 2002). In other words, the challenged statute regulated how doctors practice medicine. The Ninth Circuit invalidated the statute on free-speech grounds, observing that the government's regulation of what a doctor may

---

[8] The Board cites three cases regarding medical advice, all of which are inapposite. MTD at 12. The Board cites *Planned Parenthood v. Casey*, 505 U.S. 833, 884 (1992), but that exact citation recognizes that doctors' First Amendment rights *were* implicated by a requirement to disclose abortion information, even though the Supreme Court ultimately found no constitutional infirmity. *See also Conant v. Walters*, 309 F.3d 629, 636 (9th Cir. 2002) (stating that *Casey* and *Rust v. Sullivan*, 500 U.S. 173, 200 (1991), recognize the free-speech right of doctors to provide medical advice). In any event, *Casey* was not a 12(b)(6) dismissal. Next, *National Association for the Advancement of Psychoanalysis* is a First Amendment case, but involved unlicensed psychotherapists seeking to provide psychotherapy without a license, not a licensed professional such as Dr. Hines. 228 F.3d 1043, 1054 (9th Cir. 2000). Finally, *Shultz v. Wells* appears to have rejected any First Amendment protection for a chiropractor who told a client to throw away her prescription medications, and then sued after being disciplined for the unlicensed practice of medicine. CIV. A 209 CV646-WKW, 2010 WL 1141452 at *9-10 (M.D. Ala. Mar 3, 2010). *Shultz* is pre-*Humanitarian Law Project*, conflicts with *Conant*, which is consistent with *Humanitarian Law Project*, and is also factually distinguishable in that it involved discipline for practicing a different occupation (medicine) in which the chiropractor had no expertise.

say to a patient "strike[s] at [their] core First Amendment interests." *Id*. at 636. Importantly, the unanimous panel explicitly distinguished between occupational *speech*, which was entitled to First Amendment protection, and occupational *conduct*, which was not. The court repeatedly emphasized that its decision reached only the statutory prohibition on *advising* patients to use medical marijuana, and had no effect on the federal prohibition on doctors' *dispensing* medical marijuana to patients. *Id*. Thus, medical advice is speech that courts protect under the First Amendment.[9]

Fifth Circuit authority makes clear that courts here apply the First Amendment when occupational licensure impinges on speech. In *Byrum v. Landreth*, for example, the Fifth Circuit granted a preliminary injunction against an occupational restriction on who could use the title "interior designer." 566 F.3d 442, 448 (5th Cir. 2009). *See also Adams v. City of Alexandria*, 878 F. Supp. 2d 685, 691-92 (W.D. La. 2012) (fortunetelling) (summary judgment entered for plaintiff); *Trimble v. City of New Iberia*, 73 F. Supp. 2d 659, 667-69 (W.D. La. 1999) (same). If the Board's theory were correct, the *Byrum* court would have denied the preliminary injunction on the ground that speech regulated by interior-design licensure is not protected by the First Amendment.

---

[9] The only case that the Board discusses in any detail is *Pickup v. Brown*, an unpublished district court decision from California in which the court upheld the ban on using psychotherapy to alter the sexual orientation of a minor. MTD at 13 (citing 2012 WL 6021465 (E.D. Cal. Dec. 4, 2012). Not only does *Pickup* conflict with *Humanitarian Law Project* and *Conant*, it is inherently unreliable at this point. The Board does not tell the Court about *Welch v. Brown*, 2012 WL 6020122, *6-8 (E.D. Cal. Dec. 3, 2012), which granted a preliminary injunction against the challenged statute because the judge in *Welch* found that strict scrutiny applies under *Conant* and *Humanitarian Law Project*, and hence success on the merits was likely. The Ninth Circuit consolidated these cases and heard oral argument on April 17, 2013. It is much more likely that the Ninth Circuit will rule in favor of and reject *Pickup*.

**C.      Dr. Hines Has Plainly Stated a Plausible Claim for Relief Under the First Amendment.**

If lawyers and doctors have won on the merits of their First Amendment challenges to restrictions on their professional advice, then Dr. Hines has stated plausible claims that it is unconstitutional to bar him from giving veterinary advice via the Internet without first examining the animal in question. The Board does not even attempt to argue that Dr. Hines's claims should be dismissed if First Amendment scrutiny applies.[10] Any such argument would have been futile. Regardless of the ultimate level of free-speech scrutiny—which the Court does not need to decide here—the Board will bear the burden of establishing that its concerns are real, not imaginary, and that its restrictions are appropriately tailored to address those concerns without trenching too deeply on protected speech.[11] The Board cannot carry those affirmative burdens at the pleadings stage, and, indeed, has not even tried to do so.

**II.     THE MOTION TO DISMISS DR. HINES'S FOURTEENTH AMENDMENT CLAIMS SHOULD BE DENIED BECAUSE IT IS IRRATIONAL TO TREAT A LICENSED VETERINARIAN LIKE A LAYPERSON.**

The Board's motion to dismiss Dr. Hines's equal-protection and substantive due-process claims should be denied. The Fifth Circuit just held that plaintiffs are entitled to prevail in rational-basis cases when they use evidence and reasoning to show that the government's

---

[10] The Board has a brief section arguing that its restrictions are content-neutral and not content-based, MTD at 17-19, but the Board seems to be arguing that the restrictions on Dr. Hines's communication with pet owners are not within the First Amendment *because* they are content-neutral. That makes no sense. Content-neutrality is a First Amendment concept. Dr. Hines does not agree that the restrictions at issue are content-neutral, but it is not necessary for the Court to address that error to dispose of the Board's motion in his favor.

[11] Every known form of First Amendment review—from strict scrutiny to the various types of intermediate scrutiny—imposes a burden on the government to show real harm and at least reasonable tailoring. *See, e.g. Reno v. ACLU*, 521 U.S. 844, 874 (1997) (content-based restriction of speech is subject to strict scrutiny); *Asgeirsson v. Abbott*, 696 F.3d 454, 464 (5th Cir. 2012) (content-neutral restriction of speech is subject to intermediate scrutiny); *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 165 (5th Cir. 2007) (commercial speech regulations are subject to intermediate scrutiny under the *Central Hudson* test); *Fantasy Ranch, Inc. v. City of Arlington, Tex.*, 459 F.3d 546, 558 (5th Cir. 2006) (expressive conduct regulations are subject to a four-part test: "(1) it is within the constitutional power of the government; (2) it furthers an important or substantial government interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on first amendment freedoms is no greater than is essential to the furtherance of that interest").

asserted justifications for challenged restrictions are irrational. *See St. Joseph Abbey*, 712 F.3d at

223. Plaintiffs routinely survive motions to dismiss rational-basis challenges to occupational-

licensing restrictions. *See, e.g., Munie v. Koster*, 4:10CV01096 AGF, 2011 WL 839608, at *3

(E.D. Mo. Mar. 7, 2011); *Brown v. Hovatter*, RDB 06-524, 2006 WL 2927547 at *6 (D.Md.

Oct 11, 2006); *Merrifield v. Schwarzenegger*, 04-0498 MMC, 2004 WL 2926160 at *2 (N.D.

Cal. Sept. 23, 2004). Here, the allegations of the Complaint state plausible claims that banning a

licensed veterinarian such as Dr. Hines from giving veterinary advice via the Internet does not

rationally advance any interest that Texas has in the health of animals or people.

### A.   Dr. Hines Has Stated an Equal-Protection Claim That It Is Irrational to Treat Him Like a Layperson When He Gives Online Advice.

The crux of Dr. Hines's equal-protection claim is that there is no rational basis for

treating him like a layperson—in other words, as someone forbidden from giving veterinary

advice—simply because he is speaking to a pet owner online without first examining the animal.

As common sense and the allegations of the Complaint make clear, Compl. at ¶¶ 24-30, 35-40,

there are many useful things that a veterinarian, in the exercise of his or her professional

judgment, could say to someone—particularly someone who has no access to a veterinarian or

someone trying to sort out conflicting diagnoses—that do not require a recent physical

examination of the animal. Thus, the equal-protection question that this case presents is whether

it is rational to prohibit a licensed veterinarian from ever giving advice without examining an

animal simply because there are some circumstances in which doing so could be imprudent.

The Board scarcely addresses the actual equal-protection question presented by the

Complaint. Instead, the Board makes a series of assertions about the validity of veterinary

licensing in general—even though Dr. Hines's claims do not contest the validity of veterinary

licensing in general—and then, with no substantive analysis, declares that the challenged statutes

survive rational-basis review. MTD at 14-16. The Board also seems to argue that the Complaint is inadequate because its allegations do not address every conceivable reason for the challenged restrictions. MTD at 20.

But Dr. Hines need not demonstrate the invalidity of veterinary licensing in general to state an equal-protection claim that it is irrational to prevent him from communicating with pet owners around the world over the Internet. Nor does his Complaint have to be as voluminous as the human imagination to survive a 12(b)(6) motion. His claim simply has to be plausible. The Fifth Circuit has just provided the benchmark for plausibility: monks challenging the constitutionality of a statutory prohibition that allowed only funeral directors to sell caskets to the public. *St. Joseph Abbey*, 712 F.3d at 225-26. The monks prevailed in a unanimous panel decision upholding their victory following a one-day trial. The monks did not have to establish the invalidity of funeral-director licensure in general to prevail, nor was their complaint materially different from Dr. Hines's in terms of negating "conceivable" rationales for the challenged law. Compl. for Plaintiffs St. Joseph Abbey, et al. at ¶¶ 62-64; 73-74; 77, 80 (pages 13, 16-17), *St. Joseph Abbey v. Castille*, 835 F. Supp. 2d 149 (E.D. La. 2011) (No. 10-2717 Section "K"(5)), attached Exhibit A. The Board is simply wrong to argue that Dr. Hines's only path to victory on his equal-protection claim is to invalidate veterinary licensing in general, and to do so by filing a massively voluminous complaint that tries to counter every hypothetical fact that anyone anywhere might dream up to salvage an irrational law.

Dr. Hines's equal protection claim survives the Board's motion to dismiss because the unconstitutionality of punishing a veterinarian for giving useful veterinary advice is just as plausible as the unconstitutionality of punishing monks for selling their handmade caskets. The first step in an equal-protection analysis is identifying the legitimate government interests that

16

might justify the statutory classification at issue. *St. Joseph Abbey*, 712 F.3d. at 223. Here, the Board is not entirely clear but it appears to suggest that Texas has two interests: (1) protecting the health and well-being of companion animals and livestock; and (2) preventing the transmission of diseases from animals to people. MTD at 16. Dr. Hines does not dispute that these are legitimate government interests and that Texas may generally license veterinarians to advance those interests.

But, as with the monks' case, the existence of legitimate government interests does not mean that every specific instance of regulation necessarily survives rational-basis review, much less that Dr. Hines's Complaint should be dismissed. Instead, there must be a rational relationship between those legitimate government interests and the challenged statute.

Here, Dr. Hines has plausible claims that there is no such relationship. It is irrational to prohibit Dr. Hines from ever communicating individualized advice to pet owners without first performing a physical examination. This prohibition does not plausibly advance either of Texas's interests for three reasons: (1) licensed veterinarians do not lack the capacity to exercise professional judgment when they have not examined an animal; (2) animals with no access to veterinary care will not be better off with zero care rather than with the limited online care of a Texas-licensed veterinarian; and (3) pet owners will not be better off in a state of ignorance than if they were able to communicate with Dr. Hines.

First, prohibiting a Texas-licensed veterinarian from communicating with pet owners is irrational because veterinarians do not lose their capacity to exercise professional judgment whenever they communicate over the Internet without doing a physical examination. Veterinary medicine involves the exercise of professional judgment, from prescribing medication, to performing surgery, to referring an animal to another veterinarian with greater skill or

17

experience. It is not plausible to conclude that licensed veterinarians entrusted with making important decisions every day suddenly lose all capacity to exercise appropriate judgment when communicating over the Internet without the benefit of a physical examination. As the Fifth Circuit held in *St. Joseph Abbey*, hypothetical rationales for a law must at some point be grounded in reality and cannot be based on a conception of veterinarians that exists nowhere in the real world. 712 F.3d at 223.

Second, as the Complaint indicates, many of the animals that Dr. Hines helps live in places where they lack access to modern veterinary care. Compl. ¶ 26-27. These animals, which have no connection to America, much less Texas, will receive no veterinary care without the assistance of Dr. Hines or someone like him. Forbidding Dr. Hines from communicating with the owners of a cat in Nigeria under circumstances in which that cat will otherwise go totally without care does not rationally advance the health of the cat, advance the health of any animal in Texas, or protect any Texan from a disease that passes from animals to humans. It is cruel to forbid Dr. Hines from helping under these circumstances and cruelty is not rational.

Finally, it is irrational for Texas to presume that pet owners are better off in a state of compulsory ignorance than being able to communicate with Texas's highly qualified, licensed veterinarians. As the Complaint alleges, there are pet owners across the country and around the world who either have no access to veterinary care or who would like a neutral third-party veterinarian such as Dr. Hines to help those pet owners understand conflicting diagnoses. Compl. ¶¶ 26, 28. Texas's prohibition on Dr. Hines's communicating with these sorts of pet owners is a deliberate policy of enforced ignorance directed at grown adults; adults who are otherwise entrusted to make decisions for their animals up to and including euthanization. Compl. ¶ 25. Enforcing ignorance against adults in search of guidance from Texas's own highly qualified

18

veterinarians, such as Dr. Hines, does not rationally advance the health of any animal anywhere in the world and will not plausibly arrest the propagation of any disease.

In sum, the motion to dismiss Dr. Hines's equal-protection claims should be denied. Under the allegations of the Complaint, there is no logical connection between any interest identified by the Board—or any other conceivable interest—in punishing Dr. Hines for sharing his expertise through the exercise of his professional judgment. His claims are at least as plausible as the claims of the monks of St. Joseph Abbey were—monks asserting a constitutional right to sell caskets to the public—when they brought their challenge in 2010. Thus, Dr. Hines has stated a plausible claim for relief under the equal-protection clause.

### B.   The "Effective Foreclosure" Test Is Irrelevant Here and Does Not Defeat Dr. Hines's Substantive Due Process Claim.

There is little practical purpose in separately considering the Board's motion to dismiss Dr. Hines's substantive due-process claim because the standard is the same as in the equal-protection context: Is there a rational relationship to a legitimate government interest? The demonstrable absence of any rational basis in the equal-protection context for silencing Dr. Hines applies just the same to the substantive due-process context. Furthermore, because Dr. Hines has stated an equal-protection claim, there is virtually nothing to be gained in terms of conserving judicial or party resources by dismissing his substantive due-process claim now because discovery and trial of the issues will be the same. The Court should, therefore, deny the motion to dismiss Dr. Hines's substantive due-process claim.

For its part, the Board provides no persuasive argument that Dr. Hines's substantive due-process claim should be dismissed. The Board claims that the liberty interest in one's right to practice an occupation is cognizable only in "scenarios where an individual is 'effectively foreclosed' from working in her chosen profession." MTD at 24. According to this logic,

19

Dr. Hines already has a veterinary license and so the telemedicine restriction does not

"effectively foreclose" him from pursuing his calling. The Board's reliance on the "effectively

foreclosed" test is wrong for three reasons:

    *1.*    *The "Effectively Foreclosed" standard is narrow and applies to special privileges.*

First, the "effectively foreclosed" test does not apply here. This test originated with

*Martin v. Memorial Hospital at Gulfport.*[12] 130 F.3d 1143 (5th Cir. 1997). But *Martin* and the

few cases that cite it all involved individuals who were seeking some special government

privilege or access; not cases where someone faced a bar that would force them to stop practicing

altogether.[13] Dr. Hines's case is distinguishable. He does not seek special privileges or

certification. Dr. Hines wants to continue doing what he has been doing—without incident—for

over a decade: using the Internet to help people solve vexing pet health problems. The *Martin*

line of cases has never been expanded to include the kind of restriction on practice that Dr. Hines

challenges here, and for good reason. One does not check one's constitutional rights at the door

simply by obtaining an occupational license.

    *2.*    *Forbidding Dr. Hines from communicating with pet owners solely via the Internet effectively forecloses Dr. Hines from pursuing his calling.*

Second, Dr. Hines is *in fact* effectively foreclosed from practicing his chosen occupation.

Dr. Hines wants help people over the Internet since his physical disability prevents him from

---

[12] The *Martin* analysis applied only to procedural due-process claims to the right to practice an occupation. 130 F.3d at 1147. Dr. Hines does not bring procedural due-process claims, and so *Martin* does not technically apply here. However, cases following *Martin* seem to have collapsed the procedural versus substantive due-process distinction when applying *Martin* in the occupational licensing context. Dr. Hines therefore addresses the "effectively foreclosed" standard.

[13] *Martin*, 130 F.3d at 1145 (access to particular unit of hospital); *Sanchez v. Cnty. of El Paso, TX*, 486 Fed. Appx. 455, 456 (5th Cir. 2012) (license to write certain surety bonds); *Gaalla v. Citizens Med. Ctr.*, CIV.A. V-10-14, 2010 WL 2671705 at *1 (S.D. Tex. June 30, 2010) (right of doctors to admit patients at particular hospital); *MacArthur v. San Juan Cnty.*, 416 F. Supp. 2d 1098, 1156 (D. Utah 2005) (loss of staff privileges at particular hospital); *Petersen v. Fla. Bar*, 720 F. Supp. 2d 1351, 1364 (M.D. Fla. 2010) (lawyer specialty certification); *Zisser v. Fla. Bar*, 747 F. Supp. 2d 1303, 1321 (M.D. Fla. 2010) (same).

running a brick-and-mortar veterinary practice. If he resumes operation of his website, he will lose his license. The telemedicine restriction therefore operates as a *de facto* bar on Dr. Hines's pursuit of his occupational calling.

The Board seems to imply that Dr. Hines must forfeit his veterinary license in order to challenge the telemedicine restrictions, but that would make no sense at all. One of the primary arguments that Dr. Hines makes in this lawsuit is that, through licensure, he is capable of exercising the professional judgment necessary to render a limited amount of veterinary advice over the Internet. He should not have to surrender his license in order to exercise his constitutional right to substantive due process.

The restrictions Dr. Hines faces are significantly greater than those in *Dittman v. California*, which the Board cites to support dismissal. *Dittman* involved a licensed acupuncturist who refused to disclose his Social Security number to the State of California after a new law required its disclosure to renew certain occupational licenses, including acupuncturist licenses. 191 F.3d 1020, 1024 (9th Cir. 1999). The acupuncturist brought a substantive due-process challenge to the law and the district court granted summary judgment for the government. *Id.* While the Ninth Circuit affirmed on the merits, rejecting the acupuncturist's substantive due-process claim, it did not hold that he was barred from bringing the claim altogether, as the Board asks the Court to do here. *See id. at* 1029-30. On the contrary, the Ninth Circuit held that occupational prerequisites like the disclosure of one's Social Security number, mandatory continuing education, and testing requirements are the kind of "complete prohibitions" that will support a substantive due-process claim for the deprivation of a person's right to pursue his chosen profession. *Id.*

21

The Internet has made it possible for all kinds of people to share knowledge with others. This technology has enabled Dr. Hines to put his decades of experience to practical use, but the state has decided that this practice is illegal and should be subject to criminal penalties. Veterinarians are given a choice that is really no choice at all. They can open and maintain, at great expense, a traditional brick-and-mortar veterinary practice where they can examine animals in person, or they can do nothing and allow their licenses to go to waste. The telemedicine restriction that Dr. Hines challenges here is an absolute barrier to his being able to pursue veterinary medicine in the only way he is able to do so. As such, his substantive due-process claim is proper and should not be dismissed. *See, e.g., Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 61 (9th Cir. 1994) ("It is well settled that a provider of goods or services has standing to challenge government regulations that directly affect its customers and restrict its market.").

> 3.    *Whether someone has been "Effectively Foreclosed" from pursuing an occupation is a factual determination and cannot, therefore, be resolved at the pleadings stage.*

Finally, to the extent the Court believes Dr. Hines's "effective foreclosure" from pursuing veterinary medicine is a relevant inquiry, it is not one that should be decided on a motion to dismiss. At a bare minimum, the question of effective foreclosure should only be decided after Dr. Hines has had the opportunity to develop the facts of his case regarding the reach of the law and its impact on his ability to practice his trade.

## CONCLUSION

The motion to dismiss should be denied. Dr. Hines has pleaded facts which, when taken as true, set forth plausible claims under the First and Fourteenth Amendments. Defendants' motion to dismiss is wrong about the law, and seeks to deny Dr. Hines his right to prove his case.

22

Respectfully submitted,


/s/ Matthew R. Miller
**Matthew R. Miller**
Attorney-in-Charge
Texas Bar No. 24046444
Southern District of Texas Bar No. 1571893
INSTITUTE FOR JUSTICE TEXAS CHAPTER
816 Congress Ave., Suite 960
Austin, TX 78701
(512) 480-5936
(512) 480-5937 (fax)
mmiller@ij.org


**Jeff Rowes**\*
Of Counsel
New York Bar No. 4211991
Southern District of Texas Bar No. 1852174
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
jrowes@ij.org

*Attorneys for Plaintiff*

*\* Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this June 10, 2013, a true and correct copy of this **PLAINTIFF'S**

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS** was filed electronically and that a notice of

this filing will be sent to the following person through the Court's electronic filing system:

Angela V. Colmenero
Attorney-in-Charge
Office of the Attorney General
P.O. Box 12548
Austin, TX 78711

/s/ Matthew R. Miller

24